**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **CHRISTINE MACKLIN,** | : | **Case No. 1:03CV2347** |
| | : | |
| **Plaintiffs,** | : | **JUDGE KATHLEEN O'MALLEY** |
| | : | |
| v. | : | |
| | : | **MEMORANDUM & ORDER** |
| **EARLE B. TURNER, CLERK OF** | : | |
| **COURTS, CLEVELAND MUNICIPAL** | : | |
| **COURT,** *et al*. | : | |
| | : | |
| **Defendants.** | : | |

On October 27, 2003, Plaintiff, Christine Macklin ("Macklin"), filed a complaint against her former employer, Defendant Clerk of Courts Office of the Cleveland Municipal Court ("Clerk's Office"), Defendant Marisellie Rivera, Human Resources Manager for the Clerk's Office, and Defendant Earle B. Turner, Clerk of Courts ("Turner") (all defendants collectively referred to as "Defendants") in the Court of Common Pleas in Cuyahoga County, Ohio. Macklin's claims arise from her discharge from the Clerk's Office that year. On November 17, 2003, Defendants properly removed this case to federal court. On February 24, 2004, this Court granted in part Defendants' Motion for a more definite statement. Macklin filed an Amended Complaint on March 9, 2004.

Currently before this Court is Defendants' Motion for Summary Judgment relating to the Amended Complaint's five counts, which include age-discrimination and retaliation claims, under both the Age Discrimination in Employment Act and the Ohio Revised Code.

For the reasons more fully discussed below, this Court **GRANTS** Defendants' **Motion for Summary Judgment** as to Macklin's five claims for relief.

**I.     Facts**

The Clerk's Office employed Christine Macklin from October 21, 2002 to April 11, 2003. Doc. 21, p. 2. Macklin, a probationary, at-will employee, worked as a Data Entry Services ("DES") clerk, whose primary duty was to maintain a complete and accurate journal of courtroom matters. *Id*.

Throughout Macklin's employment, the Clerk's Office Human Resources Manager, Marieselli Rivera ("Rivera"), consulted Macklin several times for what Rivera felt were violations of the employee-conduct policy. Specifically, Rivera counseled Macklin on at least six different occasions for failure to comply with the dress code, though Rivera chose not to punish Macklin for these violations. Doc. 21, p. 4. In addition, after Macklin and co-worker Yvonne Barclay engaged in a physical and verbal altercation in one of the lunchrooms in the courthouse on February 18, 2003, Rivera investigated the incident and punished both Barclay and Macklin; each woman received four disciplinary points and a written reprimand. Doc. 21, p. 5.

On March 31, 2003, Macklin filed a charge of age discrimination with the United States Equal Employment Opportunity Commission ("EEOC") against the Clerk's Office under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq*., based on the Clerk's Office's enforcement of the dress code against Macklin. On April 9, 2003, the Clerk's Office decided to terminate Macklin's employment. The following day, the EEOC mailed its Notice of Charge of Discrimination ("Notice") regarding the first EEOC

charge to the City of Cleveland's Law Department ("Law Department"), instead of the Clerk's Office.

On April 11, the Clerk's Office informed Macklin that her employment was terminated. The Law Department received the Notice and a copy of the first EEOC charge that same day. The Clerk's Office, on the other hand, did not receive *any* notice as to the first EEOC charge until April 16, 2003. On May 2, 2003, Macklin filed a charge of retaliation with the EEOC against the Clerk's Office under the ADEA, claiming her termination resulted from reporting the alleged discriminatory treatment.

On October 27, 2003, Macklin filed a Complaint in the Cuyahoga County Common Pleas Court, and Defendants removed the action to this Court on November 17, 2003. Macklin filed an Amended Complaint on March 9, 2004. Defendants filed a motion to dismiss, which this Court granted, as to two claims for relief based upon 42 U.S.C. § 2000 *et seq*. (Title VII), and one claim under Ohio Rev. Code, Ann. § 4112.01 *et seq*. (wrongful termination).

Defendants moved for summary judgment as to Macklin's five remaining claims for relief on January 10, 2005. On January 31, 2005, Macklin filed a brief in opposition to the motion.

**II.  Law**

Federal Rule of Civil Procedure 56(c) governs summary judgment motions and provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law . . . .

Rule 56(e) specifies the materials properly submitted in connection with motions for summary judgment:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is

3

>competent to testify to the matters stated therein . . . . The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denial of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

However, the movant is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

In reviewing summary judgment motions, this Court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970); *White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941, 943-44 (6th Cir. 1990). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most civil cases the Court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id*. at 252.

Summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322. Moreover, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989) (citing *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034

(D.C. Cir. 1988)). The non-moving party is under an affirmative duty to point out specific facts in the record as it has been established which create a genuine issue of material fact. *Fulson v. City of Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992). The non-movant must show more than a scintilla of evidence to overcome summary judgment; it is not enough for the non-moving party to show that there is some metaphysical doubt as to material facts. *Id*.

### III. Macklin's Brief in Opposition Is Insufficient To Defeat Defendants' Motion for Summary Judgment

A district court, as noted above, is not obligated to wade through the entire record in search of some specific facts that might support the non-movant's claim. *Centerior Service Co. v. Acme Scrap Iron & Metal*, 104 F.Supp 2d 729, 735 (N.D. Ohio 2000); *see also Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989) *(citing Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988)). This burden belongs only to Macklin.

Macklin, however, fails to identify *any* genuine issue of fact, material or immaterial, that is in dispute in her Opposition to Defendants' Motion for Summary Judgment. Instead, Macklin makes conclusory and sweeping statements regarding her age-discrimination, defamation, and retaliation claims. *See* Doc. 28. Macklin fails to point to any specific part of the record that is before this Court that would illustrate that a genuine issue of material fact actually exists.

Because Macklin failed to meet her burden under her Rule 56 obligations, this Court grants Defendants' Motion for Summary Judgment. This Court, nevertheless, will still address the legal insufficiencies of Macklin's five remaining claims for relief.

**IV.    This Court GRANTS Defendants' Motion for Summary Judgment on Both the State and Federal Age Discrimination Claims**

    **A.    Macklin's State Age Discrimination Claim is Time-Barred by the 180-day Statute of Limitations**

Pursuant to Ohio Rev. Code Ann. § 4112.02, when an aggrieved individual seeks to enforce her rights under O.R.C. § 4112, she must institute a civil action within one hundred and eighty days (180) after the unlawful discriminatory practice occurred.[1] *See* O.R.C. §§ 4112.02(N); *see also Dunn v. Medina*, 917 F.Supp. 1185, 1191 (N.D. Ohio 1996); *Bellian v. Bicorn Corp.*, 69 Ohio St.3d 517, 520 (1994) (superceded on other grounds).

Any viable claim for employment discrimination, logically, must have occurred during Macklin's employment. The Clerk's Office terminated Macklin on April 11, 2003. If this Court were to assume that Defendants' alleged discriminatory treatment occurred on her last day of employment, the age discrimination

---

[1] While Macklin did not raise the issue, the question whether the filing of an EEOC claim tolls the running of the one hundred eighty day statute of limitations period set forth in O.R.C. § 4112.02 (N) appears to be a question of first impression in Ohio. There is a split among other circuits as to whether an EEOC claim tolls the running of the limitations periods for claims based on state law. Some circuits have held that, while a defendant is on notice of federal statutory causes of action based on an EEOC's investigation, that investigation does not provide notice of state law claims such that any applicable period of limitations for those claims would continue to run. *See*, *e.g.*, *Juarez v. Ameritech Mobile Communications. Inc.*, 957 F.2d 317, 322-23 (7th Cir. 1992); *Arnold v. United States*, 816 F.2d 1306, 1313 (9th Cir. 1987); *Greer v. Eaton Corp.*, 2005 U.S. Dist. LEXIS 9922 (D. Minn. May 24, 2005). A few courts, however, have held the opposite. Those cases note that a litigant cannot bring a state claim in federal court until a federal claim is brought, because the district court would not have supplemental subject matter jurisdiction to hear it. As a result, in the absence of tolling, a litigant would be required to argue two cases to two separate sovereigns with identical facts. *See, e.g., Brown v. Bronx Cross County Medical Group*, 834 F.Supp. 105 (S.D.N.Y. 1993). Because O.R.C. § 4112.02 (N) specifically states that an individual has one hundred eighty days to institute a civil action and is void of any tolling language, this Court assumes that Ohio legislators did not contemplate the notion of tolling. Accordingly, the Court finds that Plaintiff's filing of an EEOC claim did not toll the statute of limitations as to Plaintiff's claims under O.R.C. § 4112.02.

claim would have expired on October 8, 2003, per the 180-day statute of limitations. Macklin brought this state claim on October 27, 2003, and it is, therefore, time-barred.

Macklin argues that O.R.C. § 4112.01, *et seq*., permits a six-year statute of limitations period under *Ferraro v. B.F. Goodrich, Co*. 777 N.E.2d 282, 311 (2002); *see* Doc. 28, p. 2. This Court disagrees with Macklin's interpretation of Ferraro. In *Ferraro*, the plaintiff did not base his age discrimination claim solely on O.R.C. § 4112.02(N), but, instead, on the remedial statute O.R.C. § 4112.14. Because the plaintiff relied on the remedial statute, the Ohio Supreme Court held the O.R.C. § 2305.77 six-year statute of limitations applied to that claim. 777 N.E.2d at 290. The court expressly held, however, that any age discrimination claim premised on a violation of O.R.C.§ 4112 must comply with that statute's 180-day statute of limitations period. *Id*. at 310.

Macklin specifically invokes O.R.C. § 4112.02(N) as the *sole* legal basis for this claim. Doc. 11, ¶ 17. This Court, accordingly, finds Defendants are entitled to Summary Judgment on Macklin's state age discrimination claim.

### B. Defendants' Motion for Summary Judgment is GRANTED on Macklin's Federal Age Discrimination Claim

Macklin also asserts a claim under the Federal ADEA age-discrimination provisions and claims that Defendants discriminatorily treated her.[2] *See* Doc. 11, ¶ 11. To establish discriminatory treatment, Macklin must present either direct evidence of discrimination or introduce circumstantial evidence that would allow an

---

[2] Under Ohio law, the elements of and burden of proof for a state age-discrimination claim parallel those under the ADEA. *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 357 (6th Cir., 1998). Had Macklin's state claim not been time-barred, the Federal discrimination analysis for disparate treatment would apply with equal force. *Id*.

inference of discriminatory intent. *Vaughn v. Watkins Motor Lines, Inc.*, 291 F.3d 900, 906 (6th Cir. 2002). If a plaintiff does not present direct evidence, the plaintiff faces the initial burden of presenting a *prima facie* case of discrimination. *See Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *DiCarlo v. Potter*, 358 F.3d 408, 415 (6th Cir., 2004) (holding the *McDonnell-Douglas* framework applicable to ADEA claims).

In order to prove a *prima facie* case of discrimination, a plaintiff must show the following: 1) that he/she is a member of a protected group; 2) that he/she was subject to an adverse employment decision; 3) that he/she was qualified for the position; and 4) that he/she was replaced by a member outside his protected class, or that he/she was treated differently from similarly situated members of the unprotected class. *Kline v. TVA*, 128 F.3d 337, 349 (6th Cir. 1997).

If a plaintiff establishes a *prima facie* case for employment discrimination, and thereby creates a rebuttable presumption of discrimination, the defendant must articulate a legitimate, nondiscriminatory reason for taking the challenged action. *Id.* at 342. If the defendant satisfies this burden, in order to avoid summary judgment, the plaintiff must prove that the proffered reason was pretextual, designed to cloak the unlawful discrimination. *Id*.

Macklin alleges that Defendants discriminatorily treated her based on age in three different ways: 1) in how they enforced the dress code; 2) in how they administered discipline; and 3) in how they conducted job-performance evaluations.[3] Doc. 11, pp.4 - 5.

---

[3] Macklin also alleges age discrimination in other unspecified conduct and behavior of Defendants. Doc. 11, p. 2. Macklin states in her answer to interrogatories, however, that the "other conduct and behavior" stemmed from harassment in her choice of wardrobe and "how it was worn as opposed to younger women in the office wearing same or similar outfits." Doc. 21, exh. 13, p. 4.

8

### 1. Alleged Discriminatory Treatment Based on Dress Code Violations

Macklin claims Defendants discriminated against her based on age by enforcing the dress code against her. Macklin, however, fails to establish a *prima facie* case for this ADEA claim on these grounds.

*First*, Macklin fails to establish that she sustained an adverse employment action concerning the Clerk's Office's enforcement of the dress-code policy. Rivera counseled Macklin on several occasions regarding Macklin's attire. The receipt of oral counseling or a written reprimand, however, does not constitute an adverse employment action. An adverse action is one which *materially* alters the terms or conditions of employment because of the employer's conduct. *Mitchell v. Vanderbilt Univ.*, 389 F.3d 177, 182 (6th Cir., 2004); *Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 885 (6th Cir. 1996). Under this standard, a *materially* adverse change in employment conditions "must be more disruptive than a mere inconvenience or an alteration of job responsibilities." *Kocsis*, 97 F.3d at 886 (quoting *Crady v. Liberty Nat'l Bank & Trust Co.*, 993 F.2d 132, 136 (7th Cir. 1993)). *See Mitchell v. Vanderbilt Univ.*, 389 F.3d 177, 183 (6th Cir., 2004) (stating that depriving an employee of a graduate research assistant, forcing submission for internal review of all research applications, threatening job reassignment or disciplinary actions, and substantial downsizing of research facilities are de minimis).

Defendants' actions against Macklin resulted in both oral and written reprimands for her dress code violations. Macklin did not suffer a demotion, a suspension, or even loss of pay for any of these violations. Doc. 21, Exh. 2, pp. 232:18 - 234:10. The actions taken against Macklin had little effect on her terms or conditions of employment; Defendants' actions simply were not adverse.

*Second*, Macklin fails to establish that she was treated differently than similarly-situated members of the unprotected class. Macklin claims nine other females violated the dress code and were not reprimanded

9

for their violations. For two employees to be similarly-situated, they must be "nearly identical" in all of the *relevant* aspects of their employment situations. *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir., 1998). Employees held to different standards are not similarly-situated. *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992) (stating that the individuals a plaintiff seeks to compare his/her treatment to must have been subject to the same standards and must have been engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it).

Macklin, as a probationary employee, was subjected to a different dress code standard than non-probationers. Doc. 21, exh. 2, pp. 81:4 - 82:21. On Tuesday through Thursdays, probationary employees were required to wear a white top with a black or navy blue skirt. *Id*. None of the nine women Macklin identified as receiving preferential treatment were probationers, and therefore, they were not subjected to this dress code standard. Doc. 21, exh. 2, pp. 81:4 - 82:2.

Macklin goes on to cite other dress code violations of employees not encompassed by the Tuesday through Thursday dress code requirement. Doc. 21, exh. 1, p.3. Macklin, however, fails to clearly identify one instance in which a manager of the Clerk's Office witnessed *any* similarly-situated person violating the dress code, and then subsequently failed to discipline or counsel that employee. *Id*., pp. 71: - 72:12.

Macklin fails to show that Defendants took adverse employment actions against her or that Defendants gave preferential treatment to a similarly-situated employee. Because summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case, Macklin's claim for age discrimination fails on these grounds.

    **2.  Alleged Discriminatory Treatment Based on the Administration of Discipline**

Macklin claims Rivera gave preferential treatment in disciplinary actions to two other employees, Yvonne Barclay and Nichelle Walton, based on their age. Doc. 21, exh. 2, pp. 166:19 - 167:6. The first disciplinary action resulted from the physical and verbal altercation in the lunchroom between Barclay and Macklin. Each employee received an assignment of four points to her record and a written reprimand. If this Court were to accept that Macklin and Barclay were similarly-situated and that the punishment constituted an adverse employment decision, Barclay still received the *same* punishment as Macklin, and therefore no discriminatory treatment occurred.[4]

Macklin vaguely states that Rivera discriminated against Macklin after a second altercation, this time involving another employee, Walton. This second argument occurred sometime between February 18, 2003 and April 11, 2003. Doc. 21, exh. 1, p. 15. Macklin fails to provide *any* details of the incident, however, such as when the incident occurred, who witnessed it, what punishment Macklin received, and what punishment Walton received, or failed to receive. *See* Doc. 21, exh. 1, p. 16. Without these details, Macklin cannot establish any of the *prima facie* elements to this ADEA claim, and therefore, the claim fails on these grounds.

### 3. Alleged Discriminatory Treatment Based on Job Performance Evaluations

Macklin claims that Yvonne Barclay and Therese Franklin received preferential treatment on their job performance evaluations based upon their age. Doc. 21, eh. 2, p. 91:6. Upon reviewing the undisputed facts, Macklin fails to state a legal basis for this claim.

While being terminated from employment constitutes a legally adverse-employment decision, being

---

[4] While Macklin originally was suspended for one day, she was ultimately paid for the suspension and no additional points were placed on her record because of that suspension. Doc. 21, p. 5.

11

subjected to a poor job-performance review is not. *See Primes v. Reno*, 190 F.3d 765, 767 (6th Cir., 1999) (stating that if every low evaluation were considered an adverse action, paranoia in the workplace would replace the *prima facie* case as the basis for a Title VII cause of action); *accord Rabinovitz v. Pena*, 89 F.3d 482, 488-89 (7th Cir. 1996) (stating a low performance evaluation and consequent ineligibility for a discretionary bonus is not an actionable adverse employment action); *Montandon v. Farmland Industries, Inc.*, 116 F.3d 355, 359 (8th Cir. 1997) (stating a lower performance evaluation that is not used as a basis for any action against employee is not an adverse employment action); *Meredith v. Beech Aircraft Corp.*, 18 F.3d 890, 896 (10th Cir. 1994) (same).

If Macklin's termination was based solely on her poor job-performance evaluations, however, those evaluations could then serve as the basis for an adverse-employment decision. According to Marisellie Rivera's Affidavit, because Macklin was an at-will employee, she was never told the reasons for her termination. The affiant does state, however, that Macklin's "poor attitude played a large role in the decision to terminate her employment."

Assuming that Macklin's poor evaluations led to her eventual termination, and that she was, thus, subjected to an adverse employment action arising from those evaluations, Macklin still can not make out a prima facie case of discrimination because Macklin and Barclay were not similarly-situated for job evaluation purposes. Employees held to different standards are not similarly situated. *Mitchell* 964 F.2d at 583. Macklin, as a probationary employee, was subjected to evaluations at 30-day intervals. Barclay, as a non-probationer, was subjected to evaluations on an annual basis. Doc. 21, exh. 3. And, as a non-probationer, Barclay would not have been held to the same strict performance standards as Macklin. Accordingly, there are no "similar" evaluations regarding the two employees to compare. Macklin, again, fails to show that

Defendants gave preferential treatment to a similarly-situated employee.

Because Macklin fails to state a *prima facie* case of ADEA age-discrimination for any of her stated grounds, this Court need not reach the issue of whether Defendants' reasons for giving Macklin poor performance evaluations were pretextual. This Court, accordingly, grants Defendants' Motion for Summary Judgment on the Federal ADEA age-discrimination claim.

### V. Defendants' Motion for Summary Judgment is GRANTED on Macklin's State and Federal Retaliation Claims

Ohio courts look to federal case law when reviewing retaliation claims. *Filips v. Case Western Reserve University*, No. 79741, 2002 Ohio App. LEXIS 4576, at *7 (Ohio Ct. App. August 29, 2002). To establish a *prima facie* case of retaliation, a plaintiff must demonstrate that 1) he engaged in a protected activity; 2) the exercise of his civil rights was known to the defendant; 3) that defendant thereafter took an employment action adverse to the plaintiff; and 4) there was a causal connection between the protected activity and the adverse employment action or harassment. *See Ford v. GMC*, 305 F.3d 545, 552-53 (6th Cir. 2002).

In this case, the parties agree that Macklin engaged in a protected activity by filing her EEOC charge of age-discrimination on March 31, 2003. *See* Doc. 11, p.4; Doc. 21, p. 10; *see also Ford v. GMC*, 305 F.3d at 553. Termination of employment is a materially adverse employment action. *See Hollins v. Atlantic Co.*, 188 F.3d 652, 662 (6th Cir. 1999) (stating a materially adverse action might be indicated by a termination of employment). Macklin, therefore, has established that she had a protected right under the ADEA and that she suffered an adverse-employment action.

The questions at issue are whether Defendants knew Macklin exercised her protected right and

13

whether there was a causal connection between the exercise of that right and the adverse employment decision.

The undisputed facts surrounding the filing dates of both EEOC charges are clear. Macklin filed her EEOC age-discrimination charge on March 31, 2003. The EEOC mailed the Notice to the Law Department on April 10, 2003. After it received the Notice, the Law Department informed the Clerk's office of the charge. The Clerk's office did not receive that notice, however, until April 16, 2003, five (5) days after Macklin was terminated and seven (7) days after he official decision to terminate her was made. Macklin does not contend, moreover, that she informally notified her supervisors that she had filed an EEOC charge and, despite an opportunity for discovery, has not established that any of those involved in the decision to terminate her were aware of her charge. Because Defendants terminated Macklin *prior* to receiving notice of it, the EEOC age-discrimination charge could not possibly have influenced the Clerk's Office decision to terminate Macklin. Without notice that Macklin exercised her protected right, a causal connection between that exercise and her termination cannot exist.

Because Macklin fails to establish two material elements of this cause of action, this Court, accordingly, grants Defendants' Motion for Summary Judgment as to the state and federal ADEA retaliation claims.

## VI. This Court GRANTS Defendants' Motion for Summary Judgment for Defamation

### A. Sued in Their Official Capacities, Defendants Are Immune from Liability for Intentional Defamation

Macklin alleges, collectively in the Amended Complaint and in her discovery answers, that the Clerk's Office, Turner, and Rivera, "falsely, intentionally, and maliciously with conscious disregard" published untruths about Macklin. Doc. 11, p. 3. *See* Doc. 21, exh. 2, pp. 124:9-125:9; Doc. 21, exh. 1, pp. 22-23.

Defamation, which includes both publications of libel and slander, is a false publication causing injury to a person's reputation, exposing the person to public hatred, contempt, ridicule, shame or disgrace, or affecting the person adversely in his or her trade or business. *Sweitzer v. Outlet Communications, Inc.*, 726 N.E.2d 1084, 1088 (Ohio Ct. App. 1999) *citing* Matalka v. Lagemann, 486 N.E.2d 1220 (Ohio Ct. App. 1985). A plaintiff must allege that 1) the defendant made a false statement about the plaintiff; 2) the statement was defamatory; 3) the statement was published; 4) the plaintiff was injured as a result of that statement; and 5) the defendant acted with the requisite degree of fault. *Sweitzer*, 726 N.E.2d at 1088. Any act by which the defamatory matter is communicated to a third party constitutes publication. *Hecht v. Levin*, 66 Ohio St.3d 458, 460 (1993). Fault for publication can be either intentional or negligent. *See Bays v. Northwestern Local Sch. Dist.*, 1999 Ohio App. LEXIS 3343, *12 (Ohio Ct. App. 1999).

Macklin alleges that Defendants made six defamatory statements: 1) Macklin was terminated because of lack of work; 2) Macklin was terminated because of misconduct toward a fellow employee; 3) Macklin had a physical fight with another employee; 4) Macklin's job performance was unsatisfactory; 5) Macklin violated the dress code; and 6) Macklin was insubordinate. Doc. 21, pp. 21 - 22. Macklin alleges in her Amended Complaint that Defendants intentionally published these statements. Doc. 11, p. 3. *See also* Doc. p. 6.

Defendants argue that they are immune from liability for the alleged intentional tort of defamation. Ohio Rev. Code Ann. § 2744.02(A)(1) generally insulates political subdivisions from liability "allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." This immunity is limited by O.R.C. § 2744.02(B), which provides that political subdivisions are liable for injury, death, or loss to persons or property that is caused by the *negligence* of their employees acting within their official capacity. *Ellithorp v. Barberton City Sch. Dist. Bd.*

*of Educ.*, 1997 Ohio App. LEXIS 3053, at *5 (Ohio Ct. App., 1997). Imposition of liability on a political subdivision occurs only when liability is *expressly* imposed by a section of the Ohio Revised Code. O.R.C. § 2744.02(B)(5); *Farra v. Dayton*, 576 N.E.2d 807, 813 (Ohio Ct. App. 1989).

Because O.R.C. § 2744.02(B) includes no express exceptions from immunity for intentional torts, an employer who commits an intentional tort against an employee is not included within the exception to immunity set forth in O.R.C. § 2744.02(B)(4). *Ellithorp*, 1997 Ohio App. LEXIS 3053, at *7. *See also Farra*, 576 N.E.2d at 813.

Accepting Macklin's allegation of defamation as true - that is, that the defendants intentionally published false statements about her for the purpose of injuring her reputation - Defendant Clerk's Office and Defendants Rivera and Turner, sued in their official capacities, are statutorily immune from liability.

### B. Sued in Their Personal Capacity, Defendants Are Not Liable and therefore Defendants' Motion for Summary Judgment is GRANTED on the Defamation Claim

Employees of political subdivisions, however, are also generally immune from personal liability. *Bays*, 1999 Ohio App. LEXIS 3343, at *8-9. Ohio Rev. Code Ann. § 2744.03(A)(6) sets forth the circumstances under which an employee may be held personally liable for intentional wrongdoing. Ohio Rev. Code Ann. 2744.03(A)(6) provides in part:

> The employee, acting in their personal capacity, is immune from liability unless one of the following applies:
>
> (a) His acts or omissions were manifestly outside the scope of his employment or official responsibilities;
> (b) His acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner;
> (c) Liability is expressly imposed upon the employee by a section of the Revised Code.

16

Macklin fails to point to any evidence in the record that supports the conclusion that Rivera and Turner are personally liable pursuant to O.R.C. 2744.03(A)(6). Macklin does not identify any facts in the record that demonstrate that Rivera or Turner acted manifestly outside the scope of their employment, or that they acted maliciously or recklessly. Macklin, again, fails to meet her Rule 56 burden, and therefore, Macklin's claim for relief must fail on these grounds.

Because Defendants Rivera and Turner are immune in their official capacities, and because Macklin does not establish personal liability in Rivera's or Turner's personal capacities, this Court grants Defendants' Motion for Summary Judgment for Macklin's claim of defamation.[5]

## VII. Macklin's Attempt to Raise Any Issue Regarding Wrongful Termination is Improper

Macklin attempts to revive a wrongful termination claim in her Brief in Opposition by stating, "[a]s to Defendants' arguments concerning defamation and wrongful termination, summary judgment based upon privilege is not appropriate." Doc. 28, p. 2. This Court dismissed Macklin's wrongful termination claim well before Defendants filed this Motion for Summary Judgment. Doc. 14. Because the claim for wrongful termination has already been dismissed, this Court will not address its merits.

## VIII. Conclusion

Because Plaintiff Christine Macklin failed to meet her burden by establishing that a genuine issue of material fact exists, this Court finds Defendants are entitled to judgment as a matter of law. This Court, therefore, **GRANTS** Defendants' **Motion for Summary Judgment** as to all five remaining counts of the

---

[5] Macklin has other problems with her defamation claims - such as the fact that many of the statements were not, in fact, false (*e.g.*, she violated the dress code) and that others simply were not derogatory (*e.g.*, there was a lack of work in the Clerk's office). The Court need not reach those issues, however, because it finds other grounds to justify judgment as a matter of law on those claims.

Amended Complaint.

**IT IS SO ORDERED.**

<pre>
                                          s/Kathleen M. O'Malley            
                                          KATHLEEN McDONALD O'MALLEY
                                          UNITED STATES DISTRICT JUDGE
</pre>

**Dated:** September 9, 2005